**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ALBERTO SANCHEZ SANTA CRUZ,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **NO.  EP-12-CV-00179-ATB** |
| | § | **(by consent)** |
| **CAROLYN W. COLVIN,**[1] | § | |
| **ACTING COMMISSIONER OF SOCIAL** | § | |
| **SECURITY ADMINISTRATION,** | § | |
| **Defendant.** | § | |

## MEMORANDUM OPINION AND ORDER

This is a civil action seeking judicial review of an administrative decision.  Plaintiff appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.  Jurisdiction is predicated upon 42 U.S.C. § 405(g).  Both parties have consented to trial on the merits before a United States Magistrate Judge.  The case was transferred to this Court for trial and entry of judgment pursuant to 28 U.S.C. § 636(c) and Appendix C to the Local Court Rules of the Western District of Texas.  For the reasons set forth below, the Court REVERSES the Commissioner's decision and REMANDS for further administrative proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff **ALBERTO SANCHEZ SANTA CRUZ** filed his SSI application on September

---

[1] Carolyn W. Colvin became Acting Commissioner of the Social Security Administration on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure and the last sentence of 42 U.S.C. § 405(g), she is substituted as the Defendant herein.

4, 2009, alleging disability since August 3, 2001.[2]  (R. 28, 124, 141).  Plaintiff's application was initially denied on November 18, 2009, and then again denied upon reconsideration on December 16, 2009.  (R. 58, 64).  Plaintiff requested and was granted a hearing before an Administrative Law Judge ("ALJ") and a hearing was held remotely on December 7, 2010, at which Plaintiff, via interpreter, and a vocational expert testified.  (R. 68, 69, 25-50).

On December 29, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.  (R. 19).  The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and dyspnea (difficulty breathing, shortness of breath).  (R. 16).  Despite these findings, the ALJ determined that Plaintiff had the residual functional capacity to perform the full range of medium work and that he could still perform his past relevant work as a kitchen helper or food preparer.  (R. 17, 19).  Plaintiff's request for review was denied by the Appeals Council on March 16, 2012.  (R. 1-7).

On May 15, 2012, Plaintiff submitted his motion to proceed *in forma pauperis*.  (Doc. 1).  His request was granted on June 25, 2012.  (Doc. 4).  Plaintiff filed his complaint on June 25, 2012. (Doc. 5).  On August 30, 2012, the Commissioner filed an answer.  (Doc. 14).  That same day, a transcript of the administrative proceedings was filed.  (Doc. 16).  On October 15, 2012, Plaintiff filed his brief in support of reversing the Commissioner's decision and remanding for an award of benefits or, alternatively, for additional administrative proceedings. (Doc. 20).   On November 14, 2012, the Commissioner's brief in support of the decision to deny benefits was filed.  (Doc. 21).  The case was then transferred to this Court on December 6, 2012.  (Doc. 22).

---

[2] Plaintiff's onset was later amended to September 4, 2009.  (R. 28)

## II.  FACTUAL BACKGROUND

Plaintiff was born on November 8, 1956, making him fifty-four years old at the time of the ALJ's  decision.  (R. 124).[3]  He attended school in Mexico through the fourth grade and is unable to speak, read, or write English.  (R. 28, 156).   He has previous work experience as a kitchen helper and food preparer.  (R. 31-32, 154).   He has most recently done yard work and painted houses.  (R. 30, 32-33).

Plaintiff testified that he can no longer work because of problems with his back, legs, feet, and neck.  (R. 30).   In particular, Plaintiff testified that his feet swell and he experiences "popping" in his knees.  (R. 30, 35).   He suffers from shortness of breath and has difficulty breathing without the use of an inhaler.  (R. 40- 42).   Plaintiff further stated that he experiences constant back pain for which he wears a non-prescription back brace.  (R. 34, 36).   Plaintiff also reported being diagnosed and treated for anxiety and depression.  (R. 29, 37).

Plaintiff estimated that he could only walk two to three blocks or for about fifteen minutes before needing to rest.  (R. 34).   He also testified that he could not stand or sit in one place very long without experiencing discomfort and that he had to elevate his feet once or twice a day to alleviate the swelling.  (R. 35, 38).   Plaintiff estimated that he could lift no more than eight pounds.  (R. 35).   He also stated that many years ago he suffered an injury to his eyes that contributes to his poor eyesight.  (R. 47-49).

---

[3] Reference to court documents filed in this case is designated by "(Doc. [docket entry number(s)]:[page number(s)])."  Reference to the record of the administrative proceedings is designated by "(R. [page number(s)])."

### III.  ISSUES

Plaintiff presents the following issues for review:

1.  Whether the ALJ's finding that Plaintiff's anxiety and depression are not medically determinable impairments is supported by substantial evidence.  (Doc. 20:3).

2.  Whether the ALJ failed to accommodate Plaintiff's breathing problems.  (Doc. 20:6).

### IV.  DISCUSSION

**A.     Standard of Review**

This Court's review of the Commissioner's decision to deny benefits is limited to two inquires: (1) whether the decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence.  *Myers v. Apfel,* 238 F.3d 617, 619 (5th Cir. 2001), citing *Greenspan v. Shalala,* 38 F.3d 232, 236 (5th Cir. 1994), *cert. denied,* 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  A finding of "no substantial evidence" will be found only where there is a "conspicuous absence of credible choices" or "no contrary medical evidence." *Johnson v. Bowen,* 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (citing *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir. 1983)).

The determination of whether there is substantial evidence to support the fact findings of the Commissioner does not involve reweighing the evidence, or trying the issues *de novo*. *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000); *Haywood v. Sullivan,* 888 F.2d 1463, 1466

(5th Cir. 1989).   The court may not substitute its own judgment "even if the evidence preponderates against the [Commissioner's] decision" because substantial evidence is less than a preponderance.   *Harrell v. Bowen,* 862 F.2d 471, 475 (5th Cir. 1988).   Conflicts in the evidence are for the Commissioner and not the courts to resolve.   *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993).

The court's role is to "scrutinize the record in its entirety to determine whether substantial evidence supports" the Commissioner's findings.   *Randall v. Sullivan,* 956 F.2d 105, 109 (5th Cir.1992) (citing *Ransom v. Heckler,* 715 F.2d 989, 992 (5th Cir. 1983)) (per curiam).   "The role of the courts in this quintessentially administrative process is extremely narrow" and "the Commissioner's decision is granted great deference."   *Lewis v. Weinberger,* 515 F.2d 584, 586 (5th Cir. 1975); *Leggett v. Chater,* 67 F.3d 558, 564 (5th Cir. 1995).   If the Commissioner applied the proper principles of law and his findings are supported by substantial evidence, they are conclusive and must be affirmed. *Spellman v. Shalala,* 1 F.3d at 360.   Conversely, if the Commissioner's findings are not supported by substantial evidence, or the Commissioner incorrectly applied the law, the reviewing court may, *inter alia,* reverse the Commissioner's decision and remand the case for further proceedings.   *Murkeldove v. Astrue,* 635 F.3d 784, 792 (5th Cir. 2011).

**B.    Evaluation Process**

"Disability" means an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *2 (N.D. Tex. Aug. 9, 2012) (quoting 42 U.S.C. § 423(d)(1)(A)). In determining disability, the ALJ makes his findings according to a sequential five-step evaluation. 20 C.F.R. § 416.920. A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis. *Greenspan v. Shalala*, 38 F.3d at 236.

In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). "Substantial gainful activity" means the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452-53 (citing 20 C.F.R. § 404.1572(a)-(b), the disability insurance provision in the Social Security Act, containing similar language). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition or his age, education, and work experience. 20 C.F.R. § 416.920(b).

The ALJ then determines under the second step whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 416.920(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "[A]n impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101. Any application of this standard will be presumed incorrect unless "the correct standard is set

forth by reference to this opinion (*Stone*) or another of the same effect, or by an express statement that the construction we give to [the regulation] is used." *Id.* at 1106.  An individual who does not have a "severe impairment" will not be found to be disabled.  20 C.F.R. § 416.920(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 of the regulations will be considered disabled without the consideration of vocational factors.  20 C.F.R. § 416.920(d).  If the claimant does not qualify under the Listings, the evaluation proceeds forward.  20 C.F.R. § 416.920(e).

Before commencing the fourth step, the ALJ assesses the claimant's residual functional capacity, which is the claimant's maximum work capability.  *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); 20 C.F.R. § 416.920(e).    The ALJ then proceeds to step four and uses the claimant's residual functional capacity to determine whether the impairment prevents the claimant from performing his past relevant work.[4]  20 C.F.R. § 416.920(f).  If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.  20 C.F.R. § 416.920(f).

If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability to do other work given his residual capacities, his age, education, and work experience.  If an individual's impairment precludes him from

---

[4] Past relevant work is work that was done by the claimant within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn to do it.  20 C.F.R. § 416.960(b)(1).

performing any other type of work, he will be found to be disabled.  20 C.F.R. § 416.920(g)

An individual applying for supplemental security income benefits bears the initial burden of proving that he is disabled for purposes of the Social Security Act.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  The claimant bears the burden of proof on the first four steps of the sequential analysis, and once met, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is capable of performing. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632 (5th Cir. 1989).   The Commissioner may meet this burden by the use of the opinion testimony of vocational experts or by the use of administrative guidelines provided in the form of regulations. *Rivers v. Schweiker*, 684 F.2d 1144, 1155 (5th Cir. 1982).  The Commissioner must demonstrate that other work exists in significant numbers in the national economy that the claimant can do given the claimant's residual functional capacity, age, education, and work experience.  *Id.* at 1153.  If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he cannot, in fact, perform that work.  *Anderson v. Sullivan*, 887 F.2d at 632.

## C.    The ALJ's Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 4, 2009, the onset date.  (R. 16).   At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine and dyspnea (difficulty breathing, shortness of breath).  (R. 16).  The ALJ further determined

that neither Plaintiff's poor eyesight nor his anxiety and depression were medically determinable impairments.  (R. 16-17).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment under step three.  (R. 17).

The ALJ then found that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 C.F.R. 416.967(c).  (R. 19).  Based on Plaintiff's residual functional capacity, the ALJ determined that Plaintiff was able to perform his past relevant work as a kitchen helper or food preparer under step four.  (R. 19).  Accordingly, because the ALJ believed Plaintiff was capable of performing his past relevant work, the ALJ ruled that the Plaintiff was not disabled within the meaning of the Social Security Act.  (R. 19-20).

## V.  ANALYSIS

Plaintiff claims that the ALJ's finding that Plaintiff's anxiety and depression are not medically determinable impairments is not supported by substantial evidence.  (Doc. 20:3).  He also argues that the ALJ failed to accommodate Plaintiff's breathing problems. (Doc. 20:6).  The Commissioner responds that the ALJ properly evaluated the Plaintiff's anxiety and depression and that substantial evidence supports the ALJ's determination that neither was a medically determinable mental impairment.  (Doc 21:4).  In addition, the Commissioner argues that the ALJ properly considered Plaintiff's breathing problems and that Plaintiff failed to show his inability to perform his past relevant work at step four of the evaluation process.  (Doc. 21:8-10).

A.           **Plaintiff's Anxiety and Depression**

Plaintiff argues that under the *Stone* standard, there is more than *de minimis* evidence in the record supporting Plaintiff's claim that his anxiety and depression are medically determinable, severe mental impairments.  (Doc. 20:3).  Plaintiff further contends that the ALJ erred because he failed to properly develop the record by obtaining a consultative psychological evaluation.  (Doc 20:3-4, 6).  Finally, the Plaintiff states that the ALJ failed to follow the proper procedure for evaluating mental impairments as set forth in 20 C.F.R. § 416.920a.  (Doc. 20:4).

The Commissioner responds that Plaintiff failed to show that his anxiety and depression were medically determinable.  (Doc. 21:4).  The Commissioner states that Plaintiff was treated by prescription medication for his anxiety for too brief of a duration to definitively establish that Plaintiff had a medically determinable mental impairment during the adjudicated period, and further, that because the impairment was successfully treated, it cannot form the basis of a disabling claim.  (Doc. 21:4-5).  Furthermore, Plaintiff was never referred for evaluation or treatment by mental health professionals.  (Doc. 21:8).  Because neither the anxiety nor the depression were medically determinable impairments, the Commissioner states that the ALJ was not obligated to order a consultative psychological evaluation or to follow the special procedure for evaluating mental impairments.  (Doc. 21:6-8).

 1. *The ALJ Erred in Finding That Plaintiff's Anxiety Is Not a Medically Determinable Impairment*

Under the regulations, an impairment is medically determinable if it "result[s] from anatomical, physiological, or psychological abnormalities which can be shown by medically

acceptable clinical and laboratory diagnostic techniques.  A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."  20 C.F.R. § 416.908.  Medically acceptable evidence includes observations made by the physician during physical examinations and is not limited to the narrow strictures of laboratory findings or test results.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).

The Social Security Administration has specific regulations governing the evaluation of the severity of a claimant's mental impairment that conform with *Stone*.  *Stone*, 752 F.2d at 1101; 20 C.F.R. § 416.920a.  The ALJ first considers whether a claimant has a medically determinable mental impairment.  *See* 20 C.F.R. § 416.920a(b)(1).  The ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment.  *Id.*; *Boyd v. Apfel*, 239 F.3d 698 at 705.  Then, the ALJ must evaluate the degree of functional loss resulting from the claimant's mental impairments.  20 C.F.R. § 416.920a(b)(2).

If an impairment is found, the regulations require that the ALJ use a special psychiatric review technique ("special technique") that involves identifying each mental impairment specifically, rating the degree of functional limitation resulting from each impairment in four broad functional areas, and using those ratings to determine the severity of each impairment.  20 C.F.R. § 416.920a(c)(3).  The ALJ must document his application of the special technique throughout the process and must include a specific finding of the degree of limitation in each of the functional areas described.  20 C.F.R. § 416.920a(e).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment.  20 C.F.R. § 416.920a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at step two of the sequential evaluation process, generally concluding the analysis and terminating the proceedings.  20 C.F.R. § 416.920a(d)(1).

As pointed out by the Commissioner, this special analysis is undertaken only if the Plaintiff establishes he has a medically determinable mental impairment.  (Doc 21:4); *see* 20 C.F.R. § 416.920a.[5]  Plaintiff chiefly relies on *Scroggins v. Astrue* for the proposition that the diagnosis and medical treatment of depression and anxiety is sufficient evidence to raise suspicion about the existence of mental impairments under the *Stone* standard.  598 F. Supp. 2d 800, 805 (N.D. Tex. 2009).  *Scroggins* is distinguishable from the case at bar in some respects.  First, the ALJ in *Scroggins* failed to cite the correct *Stone* standard at step two and applied a different standard in his assessment of whether the anxiety and depression were severe.  *Id.* at 805.  In the instant case, Plaintiff does not contend that an improper standard was cited, but rather that the ALJ failed to properly apply it to this case.  Furthermore, the ALJ in *Scroggins* completely disregarded all of the evidence and record of treatment supporting the mental impairment claim, even though the record was replete with multiple diagnoses and prescriptions for anxiety and depression.  *Id.* at 806.

---

[5] "Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s).  *If we determine that you have a medically determinable mental impairment(s)*...[proceed with technique]."  20 C.F.R. § 416.920a(b)(1) (emphasis added).

*Scroggins* is instructive because the court noted how it found evidence in the record supporting the claim that plaintiff's depression and anxiety were medically determinable impairments. *Scroggins*, 598 F. Supp. 2d at 806.  In support, the *Scroggins* court observed that the plaintiff had a history of regularly taking two psychotropic prescription medications.  *Id.* Moreover, plaintiff presented evidence of diagnoses for depression and anxiety by two different physicians.  *Id.*  Additionally, two other physicians noted a medical history of anxiety.  *Id.*  The *Scroggins* court stated that, although there were no laboratory findings or treatment records from a mental health professional, the statements from four doctors were evidence that could establish the existence of a medically determinable impairment.  *Id.*

In the present case, the record reflects that Plaintiff first reported experiencing anxiety and that he did not handle stress well in the Function Report, dated September 29, 2009.  (R. 167).

At a consultative examination on October 8, 2009, by Dr. Augustine O. Eleje, Plaintiff did not report any symptoms of anxiety or depression but the doctor observed Plaintiff's mood and affect to be angered, calm, depressed, and flat.  (R. 199, 200).  Dr. Eleje further noted that Plaintiff exhibited a spontaneous stream of thought, was fully oriented, had appropriate speech, and his judgment and insight were good.  (R. 200).

On November 12, 2009, Plaintiff was interviewed by a Social Security Administration staff member.  (R. 169).  Plaintiff complained of anxiety and concentration problems.  (R. 169). The report noted that Plaintiff did not indicate a mental or emotional problem on his initial

application and that Plaintiff was not currently under psychiatric medication or treatment.  (R. 169).  The report concluded that the evidence of record did not support limitations due to a mental impairment at that time.  (R. 169).

In July 2010, Plaintiff visited the emergency room for chest pain.  (R. 234, 241).  Dr. Josue Lopez noted that Plaintiff was alert and oriented, and was cooperative with appropriate mood and affect.  (R. 240).  Dr. Lopez concluded that Plaintiff appeared to be having a component of COPD[6] vs. anxiety.  (R. 241).  Plaintiff was prescribed Ativan[7] for anxiety, and a Albuterol inhaler and Famotidine to treat his dyspnea and gastric pain, respectively.  (R. 241).  He was also given educational materials in Spanish for anxiety and panic attacks, dyspnea, and chest pain.  (R. 241).

In October 2010, Plaintiff was treated by Dr. Ling.  (R. 250-51).  Plaintiff reported experiencing anxiety because of his asthma and shortness of breath.  (R. 250).  A review of Plaintiff's symptoms was positive for anxiety due to generalized stresses but negative for depression.  (R. 250).  Plaintiff was assessed with anxiety/depression and prescribed Paxil.[8]  (R.

---

[6] COPD (chronic obstructive pulmonary disease) is a lung disease which makes it hard to breathe.  National Institute of Health, http://www.nhlbi.nih.gov/health/public/lung/copd/index.htm (last visited Apr. 3, 2013).

[7] Ativan (lorazepam) is in a group of drugs called benzodiazepines. It affects chemicals in the brain that may become unbalanced and cause anxiety and is typically used to treat anxiety disorders.  Ativan (lorazepam) Information from Drugs.com, http://www.drugs.com/ativan.html (last visited Apr. 3, 2013).

[8] Paxil (paroxetine) is an antidepressant in a group of drugs called selective serotonin reuptake inhibitors (SSRIs). Paxil affects chemicals in the brain that may become unbalanced.  It is used to treat depression and anxiety disorders.  Paxil Information from Drugs.com, http://www.drugs.com/paxil.html (last visited Apr. 3, 2013).

251).

In December 2010, Plaintiff again saw Dr. Ling.  (R. 277-78).  Plaintiff reported feeling okay but anxious when he became short of breath.  (R. 277).  Plaintiff reported that he felt better when he took his COPD medication.[9]  (R. 277).  Plaintiff was taken off Paxil because of negative side effects.  (R. 278).

During the ALJ hearing, Plaintiff testified that he took Paxil for his anxiety and depression.  (R. 37).  Plaintiff stated that it helped a little bit but indicated his breathing problems were exacerbated by the medication.  (R. 37-38).

The Commissioner states that the duration for which Plaintiff was treated by prescription medication for his anxiety was too brief to definitively establish that Plaintiff had a medically determinable mental impairment during the adjudicated period, and further, because the medication helped control the condition, the impairment could not support a disability claim. (Doc. 21:4-5).  The Commissioner appears to be arguing two contradictory points.  On one hand, the Commissioner argues that the time period that Plaintiff took his anxiety medication was too short to show its efficacy or necessity.  On the other hand, the Commissioner states Plaintiff's duration on the medication was long enough for it to have treated and controlled the condition. Setting aside this contradiction, as to the former, the only durational requirement that the regulations require when determining whether an impairment is medically determinable is that it must be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.909.

---

[9] Plaintiff specifically referred to taking tramadol and albuterol.  (R. 277).

Here, Plaintiff's initial report of feeling anxiety is listed in the Function Report, dated September 29, 2009.  (R. 167).  More than a year later, Plaintiff was assessed with anxiety and depression, and was prescribed Paxil following a visit with a treating physician.  (R. 251).  As the evidence shows, Plaintiff suffered from anxiety for more than twelve continuous months, so the durational requirement was met.

The Commissioner's second argument fails as well.  The efficacy of the treatment is not utilized to determine whether an impairment is medically determinable.  Rather, after an impairment has already been determined to be medically determinable, the efficacy of a medication is used in order to assess the impairment's severity and the claimant's residual functional capacity.  *See, e.g.*, *Hernandez v. Shalala*, 41 F.3d 665, 1994 WL 685062, at *3 (5th Cir. 1994) (per curiam) (unpublished) (concluding claimant's impairments were controlled through medication, and thus did not affect her residual functional capacity); *see also Fraga v. Bowen*, 810 F.2d 1296, 1303–04 (5th Cir. 1987) (After back surgery, claimant did not have neurological or other signs of pain sufficiently severe or long-lasting to be disabling within the meaning of the Act.); 20 C.F.R. § 416.908.  Here, Plaintiff's anxiety and depression were not necessarily controlled because, while Plaintiff stated the medication "helped a little bit," Plaintiff implied the condition was still present and affecting him.  (R. 37-38).  In fact, from the date of his first visit with Dr. Ling in October 2010, to his second in December 2010, Plaintiff reported still feeling anxious despite being on Paxil in the interim.[10]  (R. 250, 277).

---

[10] Plaintiff was, however, taken off Paxil following the second visit because he reported negative side-effects but that he felt "ok".  (R. 278).

The ALJ did not find that Plaintiff's allegations of anxiety and depression were medically determinable impairments.  In fact, the ALJ's only acknowledgment in his decision that he took them into consideration was the following: (1) the ALJ noted that in Plaintiff's October 2010 screening form to Texas Tech University, the Plaintiff related he had anxiety because of his asthma, and (2) the ALJ referred to a July 2010 evaluation by Dr. Lopez at the University Medial Center El Paso related to the Plaintiff's COPD.  (R. 16-17).  However, it is clear from a review of the record that it is awash with signs, symptoms, and objective reports of Plaintiff's anxiety that can establish the existence of a medically determinable impairment as found in *Scroggins*.  The ALJ ignored examinations by Dr. Eleje and Dr. Ling and failed to consider the anti-anxiety medication Plaintiff was prescribed.

While an ALJ is not required to cite all of the evidence in the record he considered, his decision will only be upheld if it is supported by substantial evidence.  *Brunson v. Astrue*, 387 Fed. Appx. 459, 461 (5th Cir. 2010).  An ALJ is required to develop the facts related to a disability claim "fully and fairly."  *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir. 2000).  Pursuant to 20 C.F.R. § 416.927(d), the ALJ is obligated to "evaluate every medical opinion" submitted and may not "pick and choose" only the evidence that supports his position.  *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000).  Here, the ALJ's reliance on Dr. Lopez's diagnosis is counter-productive for the Commissioner's defense.  By adopting this diagnosis, the ALJ was in fact acknowledging that Plaintiff's anxiety is medically determinable.  Even if a mental impairment is caused by a separate, physical impairment, it can still be medically determinable on its own.

In the instant case, Dr. Lopez observed that Plaintiff had a component of COPD vs. anxiety.  Dr. Lopez then treated Plaintiff for his anxiety by prescribing him medication and giving him educational material to help Plaintiff cope with his anxiety and panic attacks.  (R. 241).  This instance alone could support a determination that Plaintiff's anxiety was medically determinable and casts doubt on the ALJ's review of the record.

Based on the evidence in the record, the Court holds that the ALJ's finding that Plaintiff's anxiety is not a medically determinable impairment is not supported by substantial evidence and that the ALJ's finding was in error.  The Court is unable to make a similar determination as to Plaintiff's depression because the record is unclear, ambiguous, and not fully developed.

### 2.   *The ALJ Must Order a Consultative Examination*

The ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts.  *Kane v. Heckler,* 731 F.2d 1216, 1219 (5th Cir.1984).  The decision to order a consultative examination is within the ALJ's discretion, but the ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the determination.  *Anderson v. Sullivan,* 887 F.2d 630, 634 (5th Cir. 1989); *see also Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) (citing *Turner v. Califano,* 563 F.2d 669, 671 (5th Cir.1977)).  A consultative evaluation is "necessary" only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional

impairment.[11]  *Brock*, 84 F.3d at 728 (citing *Jones v. Bowen,* 829 F.2d 524, 526 (5th Cir. 1987)).

While the medical records contain enough information for the Court to determine that Plaintiff's anxiety is medically determinable, it is unclear whether Plaintiff's depression rises to that level.  However, the Court finds that the diagnosis and treatment of depression is sufficient evidence to raise a suspicion that the depression is a medically determinable impairment. Accordingly, the Court finds that upon remand the ALJ should order a psychological consultative examination to fully and fairly develop the record as well as to clear up the ambiguities in the record.  On remand, the ALJ should consider the full record and order the consultative evaluation before conducting the special technique.

### 3.  Because Plaintiff's Anxiety is Medically Determinable, the ALJ Erred When He Failed to Conduct the Special Technique

The ALJ failed to complete a full review of the medical evidence when he determined that Plaintiff's anxiety was not medically determinable.  Because the Court finds there was sufficient evidence that Plaintiff's anxiety is a medically determinable mental impairment, the ALJ should have applied the special technique, and he erred when he failed to do so.  *See* 20 CFR § 416.920a.

In evaluating the severity of mental impairments, the special technique provides for rating the degree of functional limitation in each of four functional areas: activities of daily

---

[11]"Limitations or restrictions which affect [a claimant's] ability to meet the demands of jobs other than the strength demands, that is, demands other than sitting, standing, walking, lifting, carrying, pushing or pulling, are considered nonexertional." 20 C.F.R. § 416.969a(a).  *See id.* § 416.969a(c) (examples of nonexertional impairments).

living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* § 416.920a(c)(3).   After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments. *Id.* § 416.920a(d). When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the ALJ will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [claimant's] ability to do basic work activities." *Id.* § 416. 920a (d)(1).

Violation of a regulation constitutes reversible error and requires remand only when a reviewing court concludes that the error is not harmless.  *See Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003).  Here, the ALJ's failure to apply the special technique left the Court unable to discern the ALJ's findings regarding the degree of Plaintiff's limitations in each of the four functional areas, or even if the ALJ properly considered all evidence relevant to those areas.  The ALJ's failure to apply the special technique and follow the regulations prevents effective review by the Court and is therefore not harmless. *See Satterwhite v. Barnhart*, 44 F. App'x 652, 2002 WL 1396957, *1-2 (5th Cir. June 6, 2002) (where a non-frivolous claim of mental impairment exists, the ALJ's failure to follow the psychiatric review technique and make the required findings constitutes legal error and requires remand); *Biles v. Astrue*, No. 3:09-CV-318-B BF, 2010 WL 4688810 (N.D. Tex. Oct. 28, 2010) (same) *report and recommendation adopted*, No. 3:09-CV-318-B BF, 2010 WL 4705117 (N.D. Tex. Nov. 19, 2010); *and Haynes v. Astrue*, No.

3:11-CV-2268-P BK, 2012 WL 1969335, at *3 (N.D. Tex. May 4, 2012) (same) *report and recommendation adopted*, No. 3:11-CV-2268-P BK, 2012 WL 1969331 (N.D. Tex. May 30, 2012). Accordingly, the Court finds that remand is required for reconsideration of Plaintiff's mental impairments using the special technique as set forth in 20 C.F.R. § 416.920a.

The Court is expressing no opinion as to whether Plaintiff's anxiety and depression rise to the level of a severe mental impairment. Upon remand, the ALJ will determine whether the Plaintiff's anxiety and depression are severe mental impairments. The ALJ will consider the effects of Plaintiff's anxiety and depression individually, or in combination with Plaintiff's additional impairments, regardless of whether they are of sufficient severity individually on their own. *Loza*, 219 F.3d at 393 (citing 20 C.F.R. § 404.1523, containing the same substantive language). If the ALJ does find a medically severe combination of impairments, the combined impact of the impairments should be considered throughout the sequential evaluation process. *Skidis v. Commissioner of Social Sec. Admin.*, No. 3:08-cv-2181-N, 2009 WL 3199232, at *9 (N.D. Tex. Oct. 2, 2009) (quoting 20 C.F.R. § 404.1523, containing the same substantive language).

**B.        Plaintiff's Breathing Problems**

Because the Court finds the case should be remanded for reconsideration based on the error at step two as it pertains to Plaintiff's mental impairments, it will not review Plaintiff's remaining claim that the ALJ allegedly failed to accommodate the Plaintiff's breathing problems at this time. On remand, Plaintiff can raise that issue and any other remaining issues before the

ALJ.  20 C.F.R. § 416.1483 (providing that when a case is remanded from federal court, the ALJ may consider any issues relating to the claim).

## VI.  CONCLUSION

For the reasons set forth above, the Court concludes that the ALJ's findings are the result of legal error and are not supported by substantial evidence.  The decision of the Commissioner is, therefore, **REVERSED** and the case is **REMANDED** for further proceedings.

On remand, the ALJ shall order a consultative evaluation and utilize the special technique pursuant to federal regulations to determine whether Plaintiff's anxiety and depression are severe impairments.

A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SIGNED** and **ENTERED** on July 1, 2013.

_____

ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE